******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.*
DOUGLAS C., JR.*
(AC 41245)

Alvord, Prescott and Sullivan, Js.

*Syllabus*

Convicted, after a jury trial, of five counts of the crime of risk of injury to a child, the defendant appealed to this court. The defendant's conviction stemmed from his alleged sexual abuse of five female victims, including C, on various dates while they were under the age of sixteen. The minor victims were often in the presence of the defendant in his home, where the defendant had contact with their intimate parts on multiple occasions. Specifically, the defendant grabbed C's breasts over her shirt on multiple occasions from September, 2005 to September, 2006. After the close of the state's case, the defendant moved for a judgment of acquittal, which the trial court granted as to a count alleging sexual assault in the second degree but denied as to the five remaining counts that charged the defendant with the crime of risk of injury to a child. Subsequently, the defendant requested that the court provide a specific unanimity instruction to the jury on the remaining five counts, which the court granted only as to one of those counts. On appeal, the defendant claimed, inter alia, that the court improperly denied his motion for a judgment of acquittal because there was insufficient evidence for the jury to convict him on the count involving C, as the three factor test used by our Supreme Court in *State* v. *Stephen J. R.* (309 Conn. 586) to determine whether a child victim's general or nonspecific testimony is sufficient to sustain a conviction in a sexual abuse case was inapplicable to the present case because C was not a very young child at the time she was abused by the defendant and when she testified at trial. *Held*:

1. The defendant's claim that the trial court improperly denied his motion for a judgment of acquittal was unavailing:

a. The defendant could not prevail on his claim that the test used by our Supreme Court in *Stephen J. R.* was inapplicable to the present case because the leniency with respect to proof that has been formulated to apply in such cases involving very young children should not be applied with equal force in the present case: although C was older than the child victim in *Stephen J. R.* when she was sexually abused by the defendant and when she testified at trial, the test articulated by our Supreme Court in *Stephen J. R.* was not dependent on the child's age and was applicable to the present case to assess whether C's testimony was sufficient to sustain the defendant's conviction because, according to C's testimony at trial, the defendant had access to her on multiple occasions at his home between September, 2005, and her sixteenth birthday in September, 2006, and the test used in *Stephen J. R.* applies to cases, such as the present case, where an alleged abuser has ongoing access to the child victim and, as a result, the victim testifies to repeated acts of abuse occurring over a period of time but, lacking any meaningful point of reference, is unable to furnish many specific details, dates or distinguishing characteristics as to individual acts or assaults; moreover, the exact number of times that the defendant had contact with C's breasts and the specific dates on which these acts occurred are not elements of committing the offense of risk of injury to a child, and the state was only required to prove that the defendant had contact with C's intimate parts on one occasion before her sixteenth birthday.

b. The defendant could not prevail on his claim that, even if the three factor test articulated in *Stephen J. R.* applied to the present case, there was insufficient evidence to convict him on the count involving C because C's testimony failed to satisfy the second and third factors of the test and, thus, that it was unreasonable for the jury to conclude from the evidence presented and the inferences drawn therefrom that the defendant had contact with C's intimate parts before she was sixteen years old: the defendant could not prevail on his claim with respect to the second factor of the test, that C's testimony failed to establish sufficiently the number of times that the defendant had contact with

her intimate parts because her testimony was inconsistent, as that claim merely attacked the credibility of C's testimony and did not undermine the sufficiency of the evidence on which the jury based its guilty verdict, and C satisfied the second factor by testifying with sufficient specificity that the defendant, who was charged with one count of risk of injury to a child for having contact with C's intimate parts in a sexual and indecent manner, touched her breasts at least once; moreover, with respect to the third factor of the test, which requires a child victim to describe the general time period in which the illegal acts occurred to assure that those acts were committed within the applicable limitation period, the state did not need to prove the time period during which each incident occurred because the defendant failed to claim that any of the conduct for which he was charged occurred outside the limitation period and, although the third factor was, nevertheless, applicable to the present case because the state was obligated to prove that the defendant had contact with C's intimate parts on one or more occasions before her sixteenth birthday, C's testimony was sufficient in this regard because it tended to demonstrate that the defendant's conduct occurred after he moved to Connecticut in September, 2005, but before she turned sixteen years old in September, 2006, and the jury could have reasonably found that C's testimony regarding the general time period during which the defendant had contact with her intimate parts was corroborated by other testimony at trial, including the testimony of the defendant's wife, who testified that C was in the defendant's home on multiple occasions before her sixteenth birthday.

2. The defendant's claim that he was deprived of his constitutional right to a unanimous jury verdict because the trial court improperly denied his request for a specific unanimity instruction as to four of the counts in violation of his rights under the federal and state constitutions, which prohibit the conviction of a criminal defendant by a jury unless it is unanimous as to the defendant's guilt, was unavailing; although the defendant was charged in four counts with having violated one statutory subdivision (§ 53-21 (a) (2)) by touching the intimate parts of each child victim on one occasion, and, at trial, the state proffered evidence that the defendant had contact with each child's intimate parts on multiple occasions, there was no requirement for the jury to be unanimous as to the specific occasion on which the prohibited contact occurred and the court was not required to provide a specific unanimity instruction, unlike the situation in which the jury must decide whether the defendant violated one of multiple statutory subsections, subdivisions or elements.

Argued October 10, 2019—officially released February 11, 2020

*Procedural History*

Substitute information charging the defendant with five counts of the crime of risk of injury to a child, and with the crime of sexual assault in the second degree, brought to the Superior Court in the judicial district of New London and tried to the jury before *Jongbloed, J.*; thereafter, the court granted the defendant's motion for a judgment of acquittal as to the charge of sexual assault in the second degree; subsequently, the court denied the defendant's motion for a judgment of acquittal; verdict of guilty of the remaining charges; thereafter, the court denied the defendant's motions for judgment notwithstanding the verdict and for a new trial, and rendered judgment in accordance with the verdict, from which the defendant appealed to this court. *Affirmed*.

*Dina S. Fisher*, assigned counsel, for the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *Theresa Ferryman*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, Douglas C., Jr., appeals from the judgment of conviction, rendered after a jury trial, of five counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[1] The defendant claims on appeal that the trial court improperly (1) denied his motion for a judgment of acquittal because there was insufficient evidence for the jury to find the defendant guilty on count three, and (2) denied his request for a specific unanimity instruction with respect to counts one, three, five, and six. We disagree and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant had sexual and indecent contact with the intimate parts of five female children—N, C, O, S, and T—on various dates while they were under the age of sixteen years old. These five children would often be in the presence of the defendant at the numerous gatherings he had at his home in Lisbon, after moving there in September, 2005. At these gatherings, the defendant would serve alcohol, including to those who were under the legal age to consume alcoholic beverages. The children would also be in the defendant's presence when babysitting his children at his home or on other occasions.

When the defendant was in the company of the children, he had contact with their intimate parts on multiple occasions. Specifically, the defendant touched the breasts of N on multiple occasions and performed oral sex on her on various occasions between 2005 and January 8, 2007; the defendant grabbed C's breasts over her shirt on multiple occasions from 2005 to September 22, 2006; the defendant placed O's hands in his pants, resulting in her making contact with his penis, placed his hands in her pants and made contact with her vagina, and touched her breasts on multiple occasions between 2005 and August 7, 2010; the defendant touched S's vagina on more than one occasion and made contact with her breasts on one occasion between 2005 through September 15, 2008; and the defendant touched T's breasts on multiple occasions between 2005 through October 23, 2007.[2]

On May 15, 2017, before the trial commenced, the defendant moved for a bill of particulars that "specif[ied] as far as reasonable the date, time, and place of the commission of the crimes alleged . . . ." The state responded by filing its substitute information on July 5, 2017, in which it provided some of these details in greater specificity for each count.

At the close of the state's case, the defendant moved for a judgment of acquittal. The state conceded that it had failed to meet its burden of proof with respect to count two and that the motion for a judgment of acquittal should be granted as to that count.[3] The state other-

wise opposed the motion. The court granted the motion as to count two and denied it as to all other counts.

After the charging conference, the defendant requested that the court provide a specific unanimity instruction to the jury on the remaining counts. The state agreed that a specific unanimity instruction should be given as to count four[4] but objected to the court giving a specific unanimity instruction on the other remaining counts. The court agreed with the state and stated that it would provide a specific unanimity instruction as to count four but not as to the other remaining counts.

The defendant then made a second motion for a judgment of acquittal. He reiterated his concerns about the "pervasive pattern of unreliability as to the testimony of each [child]" that he raised in the first motion. The defendant also argued, in part, that there was insufficient evidence for the jury to return a guilty verdict as to count three. The court denied this motion and instructed the jury. The jury returned a guilty verdict on counts one, three, four, five, and six.

After the jury returned its verdict but before sentencing, the defendant moved for judgment notwithstanding the verdict and for a new trial, citing the reasons stated in his prior motions for judgment of acquittal as support for granting these motions. The court denied the defendant's motions.

The court subsequently imposed on the defendant a total effective sentence of eighteen years incarceration, with execution suspended after serving ten years, followed by ten years of probation. This appeal followed.

I

We first address the defendant's claim that the court improperly denied his motion for a judgment of acquittal because there was insufficient evidence for the jury to convict him on count three.[5] In support of this claim, the defendant makes two arguments: (1) the test used by our Supreme Court in *State* v. *Stephen J. R.*, 309 Conn. 586, 597–98, 72 A.3d 379 (2013), to determine whether a child victim's general or nonspecific testimony is sufficient to sustain a conviction in a sexual abuse case is inapplicable to the present case because C, the child victim identified in count three, was not a very young child at the time she was abused by the defendant and when she testified at trial; and (2) even if the test articulated in *Stephen J. R.* applies to the present case, C's testimony was, nevertheless, insufficient under that test to sustain his conviction under count three. We disagree with both of the defendant's arguments.

We begin with the well settled standard governing our review of the defendant's claim that his conviction was predicated on insufficient evidence. "In reviewing a sufficiency of the evidence claim, we apply a two part

test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . .

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) Id., 593–94.

Furthermore, we are mindful that "[w]e do not sit as a thirteenth juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility." *State* v. *Stepney*, 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984).

In addition to these general principles, our Supreme Court has established a three factor test in cases in which the defendant is charged with sexually abusing a child to determine whether "generic" testimony by a complaining witness "about largely undifferentiated, but distinct, occurrences" is nonetheless sufficient to convict the defendant. *State* v. *Stephen J. R.*, supra, 309 Conn. 595. "[I]n order to accommodate both the realities of child victims of repeated abuse and the due process interests of the defendant . . . [t]he victim, of course, must describe the *kind of act or acts committed with sufficient specificity*, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy). Moreover, the victim *must describe the number of acts committed with sufficient certainty* to support each of the counts alleged in the information or indictment (e.g., twice a month or every time we went camping). Finally,

the victim *must be able to describe the general time period in which these acts occurred* (e.g., the summer before my fourth grade, or during each Sunday morning after he came to live with us), to assure the acts were committed within the applicable limitation period. Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction." (Emphasis altered; internal quotation marks omitted.) Id., 597–98. In establishing this test, the court weighed two competing considerations, namely, "[o]n the one hand, prosecutions based on generic testimony could deprive a defendant of his due process right to fair notice in order to effectively defend himself . . . [and] [o]n the other hand, testimony from a child victim describing a series of indistinguishable acts by an abuser who has ongoing access to the child is often the only evidence that the child is able to provide." Id., 595–96.

A

The defendant first argues that the test articulated in *Stephen J. R.* applies only to cases involving very young children. The child victim testifying in *Stephen J. R.* was approximately seven years old at the time the abuse occurred and was at least thirteen years old when she testified. See id., 592, 601; see also *Stephen J. R.* v. *Commissioner of Correction*, 178 Conn. App. 1, 4–5, 173 A.3d 984 (2017), cert. denied, 327 Conn. 995, 175 A.3d 1246 (2018).[6] C, on the other hand, was fourteen or fifteen years old at the time the defendant allegedly had contact with her intimate parts and was twenty-six years old when she testified at trial. Because the child in *Stephen J. R.* was considerably younger than C at the time the abuse occurred and when testifying, the defendant asserts that "[t]he leniency with respect to proof that has been formulated to apply in such cases involving very young children should not be applied with equal force [in the present case]." We are not persuaded.

This court has, in fact, recently applied the three factor test used in *Stephen J. R.* in a case in which a defendant had sexual contact with a child for the first time when the child was approximately eleven years old and on multiple occasions thereafter until the child was fifteen years old. See *State* v. *Anthony L.*, 179 Conn. App. 512, 514–15, 179 A.3d 1278, cert. denied, 328 Conn. 918, 181 A.3d 91 (2018). In *Anthony L.*, a complaint describing the sexual abuse that had occurred was not filed until ten years after the child was abused, meaning that the child would have been at least twenty-five years old when she testified. See id., 515. Similarly, in the present case, C was approximately fifteen years old when the defendant had contact with her intimate parts, and she was twenty-six years old when she testified.

Moreover, our Supreme Court's decision to apply the three factor test in *Stephen J. R.* was not dependent on the child's age at the time the abuse occurred or when she testified; rather, the court used the test in that case to consider the sufficiency of generic or nonspecific testimony that "typically arises in cases in which an alleged abuser either lives with the child victim or has ongoing access to the child and, as a result, the victim testifies to repeated acts of abuse occurring over a period of time but, lacking any meaningful point of reference, is unable to furnish many specific details, dates or distinguishing characteristics as to individual acts or assaults." (Internal quotation marks omitted.) *State* v. *Stephen J. R.*, supra, 309 Conn. 588.

Indeed, our Supreme Court in *Stephen J. R.* adopted the three factor test used by the California Supreme Court in *People* v. *Jones*, 51 Cal. 3d 294, 316, 792 P.2d 643, 270 Cal. Rptr. 611 (1990). See *State* v. *Stephen J. R.*, supra, 309 Conn. 588, 597–601. In *Jones*, the California Supreme Court, in determining the sufficiency of the child victim's generic and nonspecific testimony, considered factors *other than* the age of the child. See *People* v. *Jones*, supra, 315.[7] The court in that case further stated that "the victim's failure to specify [a] precise date, time, place or circumstance [does not] render generic testimony insufficient . . . [because] the particular details surrounding a child molestation charge are not elements of the offense and are unnecessary to sustain a conviction." Id. The court, having decided not to depend on the age of the child as a factor, concluded that a child victim's generic testimony is sufficient to sustain a conviction if the child is able to "describe the kind of act or acts committed with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct . . . the number of acts committed with sufficient certainty to support each of the counts alleged in the information or indictment . . . [and] the general time period in which these acts occurred . . . to assure the acts were committed within the applicable limitation period." (Emphasis omitted.) Id., 316. Indeed, the California Supreme Court acknowledged that "even a mature victim might understandably be hard pressed to separate particular incidents of repetitive molestations by time, place or circumstance." Id., 305.

Although C was older than the child victim in *Stephen J. R.* when she was sexually abused by the defendant and when she testified at trial, the test articulated by our Supreme Court in that case is nevertheless applicable to the present case for two reasons. First, according to C's testimony at trial, the defendant had access to her on multiple occasions at his home between September, 2005, and September 22, 2006, her sixteenth birthday. See *State* v. *Stephen J. R.*, supra, 309 Conn. 588

(applying three factor test in case in which "an alleged abuser . . . has ongoing access to the child and, as a result, the victim testifies to repeated acts of abuse occurring over a period of time but, lacking any meaningful point of reference, is unable to furnish many specific details, dates or distinguishing characteristics as to individual acts or assaults" (internal quotation marks omitted)).

Second, like the sexual assault charge in *Jones*, the exact number of times that the defendant in the present case had contact with C's breasts and the specific dates on which these acts occurred are not elements of committing the offense of risk of injury to a child. Indeed, the state was only required to prove that the defendant had contact with C's intimate parts on *one occasion before her sixteenth birthday*. For the reasons stated, although C was older than the child victim in *Stephen J. R.* at the time the sexual abuse occurred and when she testified, it is appropriate for this court to use the three factor test articulated by our Supreme Court in *Stephen J. R.* to assess whether C's testimony was sufficient to sustain the defendant's conviction under count three.

B

Turning to the defendant's second argument, he asserts that, even if the test articulated in *Stephen J. R.* applies to the present case, there was nevertheless insufficient evidence to convict him on count three. The defendant concedes that C sufficiently specified the manner in which the defendant had contact with her intimate parts to satisfy the first factor of the test. He asserts, however, that her testimony failed to satisfy the second and third factors of the test because "[s]he ultimately was unable to provide any information sufficient to establish how many times the alleged conduct occurred, or even the necessary time period." Thus, the defendant contends that it was unreasonable for the jury to conclude from the evidence presented and the inferences drawn therefrom that the defendant had contact with C's intimate parts before she was sixteen years old. We disagree with the defendant's arguments regarding the second and third factors.

With respect to the second factor, the defendant argues that C's testimony was inconsistent and, because of its inconsistency, failed to establish sufficiently the number of times that the defendant had contact with her intimate parts. This argument, however, merely attacks the *credibility* of C's testimony; it does not undermine the *sufficiency* of the evidence on which the jury based its guilty verdict. Our Supreme Court has determined that a child's inconsistent testimony as to the number of times a defendant abused him or her does not mean that the child's testimony necessarily fails the second factor of the test. See *State* v. *Stephen J. R.*, supra, 309 Conn. 599–600. Rather, the court con-

cluded that "[i]t is axiomatic that evidentiary inconsistencies are for the jury to resolve, and it is within the province of the jury to believe all or only part of a witness' testimony . . . [and that the] jury [is] free to credit one version of events over the other, even from the same witnesses." (Citation omitted; internal quotation marks omitted.) Id., 600. In *Stephen J. R.*, although the child testified at trial that the defendant sexually abused her on three to four occasions but stated in her videotaped diagnostic interview later introduced at trial that "these same acts occurred five to six times, perhaps as many as ten times," our Supreme Court nevertheless concluded that "the cumulative evidence, read in the light most favorable to sustaining the verdict, established that the defendant [sexually abused the child] on at least four occasions." Id., 599–600.

Turning to the present case, the defendant was charged with one count of risk of injury to a child in violation of § 53-21 (a) (2) for having contact with C's intimate parts in a sexual and indecent manner. That means the state was required to prove beyond a reasonable doubt *only* that on *one* occasion the defendant had "contact with the intimate parts" of C when she was "under the age of sixteen years . . . in a sexual and indecent manner likely to impair the health or morals of such child . . . ." General Statutes § 53-21 (a) (2). Thus, to satisfy the second factor of *Stephen J. R.*, C was required to testify with sufficient certainty that the defendant had contact with her breasts on at least one occasion. See *State* v. *Stephen J. R.*, supra, 309 Conn. 597 (holding that "the victim must describe the number of acts committed with sufficient certainty *to support each of the counts alleged in the information*" (emphasis altered; internal quotation marks omitted)); *State* v. *Anthony L.*, supra, 179 Conn. App. 522 (concluding that "[the child's] testimony was sufficient for the jury reasonably to conclude that the state had proven the elements of one count of sexual assault in the first degree and one count of risk of injury to a child, beyond a reasonable doubt," when "[t]he [child] testified that . . . the defendant digitally penetrated her vagina *more than once*" (emphasis added)).

In the present case, the allegation in count three that the defendant had contact with C's intimate parts was based on C's testimony at trial that the defendant touched her breasts on more than one occasion. At trial, C testified that "there would be times when [the defendant] would grab [her] and the other cousins inappropriately." She then described the defendant's touching her inappropriately, stating that "it was always a quick, like, boob grab, kind of like a tweak. It wasn't like he was feeling around to check anything or he didn't go under the shirt. It was always over the shirt, quick grab. . . . I saw him grab [N] and [O] quite frequently. He did so less to me and my sister, but . . . it did still happen." On cross-examination, C reiterated

the frequency of the defendant's touching her breasts, stating that "[i]t was a frequent occurrence . . . . It happened on multiple occasions." She further testified that "[i]t happened consistently. It happened every year. It happened almost every time we were over [at the defendant's home]. I just don't remember dates." Because C testified with sufficient specificity that the defendant touched her breasts at least once, we conclude that her testimony satisfied the second factor.

With respect to the third factor, the defendant similarly takes issue with C's inability to recall specifics, namely, her inability to state the exact dates on which the defendant touched her breasts. The third factor requires a child to describe "the general time period in which these acts occurred . . . *to assure the acts were committed within the applicable limitation period.*" (Emphasis altered; internal quotation marks omitted.) *State* v. *Stephen J. R.*, supra, 309 Conn. 597. Thus, to satisfy the third factor, the state is required to prove the general time period during which the abuse took place *only* if a "statute of limitations concern [is] implicated . . . ." (Citation omitted.) Id., 600. On appeal, however, the defendant in the present case does not assert that there was insufficient evidence for a jury to conclude that the defendant's contact with C's intimate parts occurred *within the limitation period.* Thus, like the decision in *Stephen J. R.*, because the defendant failed to invoke that any of the conduct for which he was charged occurred outside the limitation period, "the state [did] not need to prove the time period during which each incident occurred . . . ." (Citation omitted.) Id.

Nevertheless, because the state was obligated to prove that the defendant had contact with C's intimate parts on one or more occasions before her sixteenth birthday, we conclude that the third factor is applicable under the circumstances of this case. C's testimony, however, was sufficient in this regard because it tended to demonstrate that the defendant touched her breasts after he moved to Connecticut in September, 2005, but before she turned sixteen years old on September 22, 2006. In her cross-examination, C testified that the defendant grabbed her breasts when he lived in Cranston, Rhode Island, and that this conduct continued when the defendant moved to Connecticut in September, 2005. Furthermore, she testified that, prior to her sixteenth birthday, she visited the defendant's home "almost monthly."[8] She also stated that the defendant "definitely" grabbed her breasts in 2006, and that it happened "frequently . . . [and] consistently over time." In addition, she stated that "[i]t happened every year . . . [and that] [i]t happened almost every time [she] went over [to the defendant's home]."

Indeed, the jury could have reasonably found that C's testimony regarding the general time period during

which the defendant had contact with her intimate parts was corroborated by other testimony at trial. For example, the defendant's wife testified that C attended a birthday party at the defendant's home in the fall of 2005, which was the first time C visited the defendant's home in Lisbon; C would attend birthday parties at the defendant's home and the Ultimate Fighting Championship (UFC) watch parties that would take place thereafter; and C attended a creamed corn eating contest at the defendant's home in summer, 2006, and visited the home during summer and school vacations. Therefore, on the basis of her testimony at trial, we conclude that C testified with sufficient specificity as to the general time period during which the defendant touched her intimate parts and, thus, satisfied the third factor.

On the basis of C's testimony, the jury could have reasonably concluded or inferred that the defendant touched her intimate parts at least one time between September, 2005, and her sixteenth birthday. Accordingly, the cumulative evidence, read in the light most favorable to sustaining the verdict, was sufficient for the jury to find beyond a reasonable doubt that the defendant committed the offense charged in count three.

## II

The defendant next claims that he was deprived of his constitutional right to a unanimous jury verdict because the court improperly denied his request for a specific unanimity instruction as to counts one, three, five, and six, in violation of his rights under the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. We disagree.

The principles concerning a criminal defendant's constitutional right to be convicted only if the jury unanimously agrees that the defendant is guilty of the crime for which he or she is charged are well settled. The sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution prohibit the conviction of a criminal defendant by a jury unless it is unanimous as to the defendant's guilt. See *Burch* v. *Louisiana*, 441 U.S. 130, 134, 99 S. Ct. 1623, 60 L. Ed. 2d 96 (1979) (holding that "conviction by a nonunanimous six-member jury in a state criminal trial for a nonpetty offense deprives an accused of his constitutional right to trial by jury"); *State* v. *Pare*, 253 Conn. 611, 624, 755 A.2d 180 (2000) (stating that criminal defendant's "right to unanimous verdict [is] protected by article first, § 8, of [the] Connecticut constitution"). To ensure that a defendant's constitutional right to a unanimous verdict is protected, our Supreme Court has concluded that "the unanimity requirement . . . requires the jury to agree on the factual basis of the offense. The rationale underlying [this] requirement is that a jury cannot be deemed to be unanimous if it applies inconsistent factual conclusions to

alternative theories of criminal liability." *State* v. *Bailey*, 209 Conn. 322, 334, 551 A.2d 1206 (1988).

This court has enforced the unanimity requirement in cases like *State* v. *Benite*, 6 Conn. App. 667, 669–70, 507 A.2d 478 (1986), in which a defendant's criminal liability is premised on his or her having violated one of multiple statutory subsections, subdivisions or elements. In *Benite*, because the defendant's criminal liability was contingent on his having violated one of two statutory subdivisions, and the jury was required to be unanimous beyond a reasonable doubt as to which subdivision he violated, this court held that the trial court should have provided a specific unanimity instruction.[9] Id., 670, 675–76.

Our Supreme Court, however, has "not required a specific unanimity charge to be given in every case [like *Benite*] in which criminal liability may be premised on the violation of one of several alternative subsections [or subdivisions] of a statute." *State* v. *Famiglietti*, 219 Conn. 605, 619, 595 A.2d 306 (1991). Instead, an appellate court "invoke[s] a multipartite test to review a trial court's omission of such an instruction. [An appellate court] first review[s] the instruction that was given to determine whether the trial court has sanctioned a nonunanimous verdict. If such an instruction has not been given, that ends the matter. Even if the instructions at trial can be read to have sanctioned such a nonunanimous verdict, however, [an appellate court] will remand for a new trial only if (1) there is a conceptual distinction between the alternative acts with which the defendant has been charged, and (2) the state has presented evidence to support each alternative act with which the defendant has been charged." Id., 619–20.

The requirement that a court provide a specific unanimity instruction generally is limited to cases, like *Benite*, in which multiple factual allegations amount to the defendant having violated multiple statutory subsections or subdivisions. See *State* v. *Mancinone*, 15 Conn. App. 251, 274, 545 A.2d 1131, cert. denied, 209 Conn. 818, 551 A.2d 757 (1988), cert. denied, 489 U.S. 1017, 109 S. Ct. 1132, 103 L. Ed. 2d 194 (1989). Indeed, this court has held that a "fact-specific and closely focused unanimity instruction . . . [is necessary only if] the particular count under consideration by the jury is based on multiple factual allegations which amount to multiple statutory subsections or multiple statutory elements of the offense involved." Id. Therefore, the requirement does not apply in cases, such as the present case, in which the state charges a defendant with having violated a single statutory subdivision one time, and the evidence proffered by the state at trial amounts to the defendant having violated that statutory subdivision on multiple occasions.[10]

Moreover, the test used by our Supreme Court in *State* v. *Famiglietti*, supra, 219 Conn. 619–20, to deter-

mine whether a trial court was required to provide a specific unanimity instruction, does not apply in cases in which the multiple factual allegations do not amount to multiple statutory subsections, subdivisions or elements having been violated. The *Famiglietti* test examines, in part, whether there is a conceptual distinction between the *alternative statutory subsections, subdivisions or elements* which the defendant has been charged with violating. See id. (assessing whether two statutory subdivisions are conceptually distinct). Indeed, such a test would be of little utility in a case in which a defendant is charged with violating only *one* statutory subsection, subdivision or element. Therefore, the *Famiglietti* test is generally limited to those cases in which a trial court does not provide a specific unanimity instruction, even though the multiple factual allegations amount to the defendant having violated multiple statutory subsections or subdivisions.

This court engages in plenary review of a trial court's decision in a criminal trial to decline to give a specific unanimity instruction that the defendant had requested. See *State* v. *Jennings*, 216 Conn. 647, 663–64, 583 A.2d 915 (1990); see also *State* v. *Brodia*, 129 Conn. App. 391, 400–401, 20 A.3d 726, cert. denied, 302 Conn. 913, 27 A.3d 373 (2011); *State* v. *Scribner*, 72 Conn. App. 736, 740, 805 A.2d 812 (2002).

In the present case, the defendant was charged[11] with five separate counts under § 53-21 (a) (2), each involving a different child.[12] Counts one, three, five, and six charged the defendant with having violated a *single* statutory subdivision—subdivision (2) of subsection (a) of § 53-21—the basis of which was evidence presented at trial that, on *multiple occasions*, the defendant had contact with the intimate parts of the child identified in each of those counts.[13]

In similar cases, in which a defendant was charged with having had contact with the intimate parts of a child in violation of § 53-21 based on the defendant having committed proscribed acts on *multiple* occasions, our courts have held that a specific unanimity instruction was not required to preserve a defendant's right to a unanimous verdict. See *State* v. *Spigarolo*, 210 Conn. 359, 391–92, 556 A.2d 112 (determining that defendant's right to unanimous verdict was not violated in absence of specific unanimity instruction, even though six specific acts of sexual activity were alleged in two counts), cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989); *State* v. *Michael D.*, 153 Conn. App. 296, 321–27, 101 A.3d 298 (concluding that, even though evidence of three specific acts of sexual misconduct was presented at trial, "there was no risk that the jury's verdict was not unanimous"), cert. denied, 314 Conn. 951, 103 A.3d 978 (2014).[14]

The defendant in the present case nevertheless argues that, although he was charged in counts one,

three, five, and six with having violated *one statutory subdivision* by touching the intimate parts of each child on one occasion, the court improperly denied his request for a specific unanimity instruction because, at trial, the state proffered evidence that the defendant had contact with each child's intimate parts on *multiple occasions*. Because of the way in which the state prosecuted its case, and in the absence of a specific unanimity instruction, the defendant argues that the jury may not have been unanimous as to the *occasion* on which the defendant had contact with the intimate parts of each child. In other words, the defendant contends that, with respect to counts one, three, five, and six, the federal and state constitutions required the jury to unanimously agree as to the occasion on which the illegal conduct occurred. We are not persuaded.

We first set forth the standard for determining whether a trial court was required to provide a specific unanimity instruction when an information charges a defendant with having violated one statutory subsection on one occasion and the state presents evidence at trial that the defendant violated that single statutory subsection on multiple occasions.[15] "[I]f the actions necessary to constitute a violation of one statute or subsection of a statute are distinct from those necessary to constitute a violation of another, then jurors who disagree on which one the state proves cannot be deemed to agree on the actus reus: the conduct the defendant committed. Where the evidence presented supports both alternatives, the possibility that the jurors may actually disagree on which alternative, if either, the defendant violated is the highest. Under such circumstances, the jurors should be told that they must unanimously agree on the same alternative. . . . [S]uch a charge is required only where a trial court charges a jury that the commission of any one of several alternative actions would subject a defendant to criminal liability, and those actions are conceptually distinct from each other, and the state has presented some evidence supporting each alternative. The determination of whether actions are conceptually distinct must be made with reference to the purpose behind the proposed charge: to [e]nsure that the jurors are in unanimous agreement as to what conduct the defendant committed. . . .

"[This rule, however, is] limited to a case in which the actions necessary to constitute a violation of one statute or subsection of a statute are distinct from those necessary to constitute a violation of another . . . . Thus, [this] rule, which requires the trial court in appropriate circumstances to give, even in the absence of a proper request or exception, a fact-specific and closely focused unanimity instruction, *only applies where the particular count under consideration by the jury is based on multiple factual allegations which amount to multiple statutory subsections or multiple statutory elements of the offense involved. It does not apply, and*

*such an instruction is not required of the court, where the multiple factual allegations do not amount to multiple statutory subsections or to multiple statutory elements of the offense. . . .*

"[The] limitation on [this] rule, moreover, comports with common sense and sound principles by which to view jury verdicts. In most criminal trials, the evidence will allow to one degree or another differing but reasonable views regarding what specific conduct the defendant engaged in which formed the basis of the jury's verdict of guilt. For example, different witnesses may present different versions of the defendant's conduct; and the same witness may testify inconsistently in his description of that conduct, and thus present differing versions of that conduct. In such cases, it is a familiar principle that the jury is free to accept or reject all or any part of the evidence. . . . *In such cases, however, there is nothing in the constitutional requirement of jury unanimity that requires a specific instruction that the jury must be unanimous with regard to any one of those varying factual versions. As long as the jurors are properly instructed on the legal elements of the crime which must be proved beyond a reasonable doubt, they need not be further instructed that they all must agree that the exact same conduct constituted the proscribed act.* In such cases, we safely rely on the presumption that the jury understands and properly follows the court's instruction that its verdict be unanimous . . . and we do not attempt to divine whether that presumption is valid.

"Where, however, the jury is presented with alternative, conceptually distinct statutory subsections, or with alternative, conceptually distinct elements of the same statute, as possible bases for guilt, the principles of [this rule concerning specific unanimity instructions] come into play, because it is in those situations that the possibility that the jurors may actually disagree on which alternative, if either, the defendant violated is the highest. . . . In those situations, therefore, we require a specific unanimity instruction as an additional corollary to the usual unanimity instruction." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Mancinone*, supra, 15 Conn. App. 273–76. In *State* v. *Scott*, 11 Conn. App. 102, 119–22, 525 A.2d 1364, cert. denied, 204 Conn. 811, 528 A.2d 1157 (1987), we applied these principles and declined to review in full a defendant's claim that he was deprived of his constitutional right to a unanimous verdict. In that case, although "the court . . . submitt[ed] to the jury *two alternative factual bases* for the larceny charge, one of which was factually insufficient"; (emphasis added) id., 119; "[the] information charged only one way of committing the crime of larceny in the third degree, namely, that the defendant wrongfully took property from the person of the victim, and the jury was not presented with any *statutory alternative*

*ways* of committing this offense." (Emphasis added; internal quotation marks omitted.) Id., 121.

In other words, a trial court may be required to provide a specific unanimity instruction when, to find a defendant guilty under a count of an information, the jury must decide whether the defendant violated one of multiple statutory subsections or elements. The court is not required, however, to provide a specific unanimity instruction when the state charges a defendant with having violated one statutory subsection one time and proffers evidence at trial that amounts to the defendant having violated that single statutory subsection on multiple occasions. Thus, to convict a defendant under a count of an information alleging that the defendant violated § 53-21 (a) (2) once, the basis of which is evidence presented at trial amounting to the defendant having violated that statutory subdivision multiple times, the jury is required to unanimously agree *only* that on *one occasion* the defendant had contact with the intimate parts of the child identified in that count while that child was under sixteen years of age in a manner that was sexual and indecent and likely to impair that child's health or morals.[16] There is no requirement, however, for the jury to be unanimous as to the specific occasion on which that prohibited contact occurred.[17]

In making his assertion that the court was required to give a specific unanimity instruction as to counts one, three, five, and six, the defendant relies primarily on our decision in *State* v. *Benite*, supra, 6 Conn. App. 669–77, and the decision of the United States Court of Appeals for the Fifth Circuit in *United States* v. *Gipson*, 553 F.2d 453, 456–59 (5th Cir. 1977). He argues that these cases require the jury to be unanimous as to the specific act on which it based its verdict on each count. The decisions in *Benite* and *Gipson*, however, are inapposite to the present case.

In *Benite*, the defendant was charged with burglary in the first degree. *State* v. *Benite*, supra, 6 Conn. App. 670. As this court noted, "[t]o obtain a conviction for burglary in the first degree, the state must prove beyond a reasonable doubt that the individual charged committed burglary, and it must also prove one of two aggravating factors: (1) that the individual committed the burglary armed with explosives or a deadly weapon or dangerous instrument; General Statutes § 53a-101 (a) (1); or (2) that he committed burglary and in the course of committing the offense, he intentionally, knowingly or recklessly inflict[ed] . . . bodily injury on anyone. General Statutes § 53a-101 (a) (2)." (Footnote omitted; internal quotation marks omitted.) *State* v. *Benite*, supra, 670. This court held that a specific unanimity instruction was required because "the two kinds of conduct which expose an individual to punishment for burglary in the first degree are conceptually different

from one another." Id., 675.

Similarly, in *Gipson*, the defendant was charged with selling *or* receiving a stolen vehicle in violation of 18 U.S.C. § 2313 (1976). See *United States* v. *Gipson*, supra, 553 F.2d 455. The statute under which the defendant was charged in *Gipson* proscribed six different acts. Id., 455 n.1.[18] At trial, "the prosecution presented evidence tending to show that [the defendant] performed each of the . . . acts prohibited by [the statute]." Id., 459.

To find that the defendant had violated 18 U.S.C. § 2313 (1976) beyond a reasonable doubt, the jury had to conclude that the defendant had violated one of the six proscribed acts enumerated in that statute. See id., 455, 458. The trial court in *Gipson*, however, "charged the [jurors] that in order to convict the defendant they need not agree on which of the six statutorily prohibited acts the defendant had committed, as long as they were each convinced beyond a reasonable doubt that he had committed one or another of the acts proscribed. . . . The [C]ourt of [A]ppeals reversed the defendant's conviction on the ground that the instruction had violated his right to a unanimous jury verdict. . . . The court reasoned that the statute prohibited six acts in two distinct conceptual categories: (1) receiving, concealing and storing; and (2) bartering, selling and disposing. The challenged charge violated the defendant's right to a unanimous jury verdict because it authorized the jury to return a guilty verdict despite the fact that some jurors may have believed that [the defendant] engaged in conduct only characterizable as receiving, concealing, or storing while other jurors were convinced that he committed acts only constituting bartering, selling, or disposing." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Jones*, 193 Conn. 70, 75–76, 475 A.2d 1087 (1984); see also *United States* v. *Gipson*, supra, 455–59. Thus, the court in *Gipson* determined that a specific unanimity instruction should have been given "[b]ecause it is impossible to determine whether all of the jurors agreed that the defendant committed acts falling within one of the two conceptual groupings . . . ." (Citation omitted.) *United States* v. *Gipson*, supra, 459.

Neither the circumstances of *Benite* nor *Gipson*, however, are analogous to the way in which the defendant was charged in the present case.[19] Under counts one, three, five, and six, the defendant in the present case was charged with having violated *a single statutory subdivision* once, the basis for which was evidence presented at trial that the defendant had engaged in conduct prohibited by that singular statutory provision *on multiple occasions*.

This court has distinguished between cases like *Benite* and *Gipson*, in which the defendant's criminal liability under a criminal count was predicated on his or her having violated multiple statutory subsections

or elements, and the situation in the present case, in which the defendant is charged with having violated a single statutory subdivision one time with each child, and the evidence offered at trial amounts to the defendant having engaged in proscribed conduct with each child on multiple occasions. See *State* v. *Mancinone*, supra, 15 Conn. App. 274. In making this distinction, this court has stated that "a fact-specific and closely focused unanimity instruction, [*is necessary only if*] *the particular count under consideration by the jury is based on multiple factual allegations which amount to multiple statutory subsections or multiple statutory elements of the offense involved. It does not apply, and such an instruction is not required of the court, where the multiple factual allegations do not amount to multiple statutory subsections or to multiple statutory elements of the offense.*" (Emphasis added.) Id.[20] Thus, the holdings in *Benite* and *Gipson* concerning whether a trial court was required to provide a specific unanimity instruction that the defendant recites are inapplicable to this case.

In the present case, the trial court was not required to provide a specific unanimity instruction because the evidence proffered by the state at trial—that the defendant had contact with each child's intimate parts on multiple occasions—*did not* amount to the defendant's having violated multiple statutory subsections or elements.[21] Accordingly, having reviewed the trial court's charge in its entirety, we conclude that the trial court did not improperly deny the defendant's request for a specific unanimity instruction with respect to counts one, three, five, and six.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2012); we decline to identify any party protected or sought to be protected under a protective order or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

[1] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony for a violation of subdivision (2) of this subsection . . . ." Although § 53-21 (a) has been amended by the legislature since the events underlying the present appeal, those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

" 'Intimate parts' " are defined as "the genital area . . . groin, anus . . . inner thighs, buttocks or breasts." General Statutes § 53a-65 (8). Section 53a-65 (8) was amended by No. 06-11, § 1, of the 2006 Public Acts, which made changes to the statute that are not relevant to this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] The allegations in count one pertain to N; count three pertains to the allegations regarding C; count four pertains to the allegations regarding O; count five pertains to the allegations regarding S.; and count six pertains to the allegations regarding T.

[3] Count two charged the defendant with sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (3). Regarding the court's granting of the defendant's motion for a judgment of acquittal as to this count, the state, in its appellate brief, notes that "the state was required to present evidence that at the time the defendant subjected . . . [N] . . . to cunnilingus . . . she was physically helpless." (Internal quotation marks omitted.) N, however, did not testify that she was physically unable to resist the defendant's conduct. Thus, the state "conceded that the defendant's motion for a judgment of acquittal should be granted . . . as to count two."

[4] In count four of the amended substitute information, the state alleged that the defendant "had contact with the intimate parts of a child under the age of sixteen years . . . *and* subjected said minor female to contact with his intimate parts . . . ." (Emphasis added.) The defendant requested, and the state did not object to, the court providing a specific unanimity instruction as to this count. The court provided the following instruction as to count four to the jury: "As to count four, the state has also alleged that the defendant subjected the child or specific minor female alleged . . . to contact with the defendant's intimate parts. Again, it is sufficient if the contact is with any one of the intimate parts. Now, the state has alleged that the defendant committed this element of the offense in *two different ways* on count four. You may find this element established only if you all unanimously agree that the state has proved beyond a reasonable doubt that the defendant had contact with the intimate parts of [the minor female] *or* you all agree that the state has proved beyond a reasonable doubt that the defendant subjected [the minor female] to contact with his intimate parts *or* both." (Emphasis added.)

[5] Count three charged the defendant with risk of injury to a child in violation of § 53-21 (a) (2) for having contact with the intimate parts of C while she was under sixteen years of age. We consider the defendant's insufficiency of the evidence claim first because, if successful, the defendant would be entitled to a judgment of acquittal as to count three. See *State* v. *Reed*, 176 Conn. App. 537, 540 n.3, 169 A.3d 326, cert. denied, 327 Conn. 974, 174 A.3d 194 (2017).

[6] The victim initially described this abuse in a videotaped diagnostic interview with a clinical child interview supervisor when she was approximately thirteen years old. See *State* v. *Stephen J. R.*, supra, 309 Conn. 592, 601; see also *Stephen J. R.* v. *Commissioner of Correction*, supra, 178 Conn. App. 4–5.

[7] In declining to consider age as a factor when developing the three factor test, the court in *Jones* noted that the California legislature adopted a statute that, in a criminal trial in which a child who is testifying is ten years old or younger, the court, upon request of a party, must instruct the jury that it may not discredit a child's testimony simply because of his or her age. See *People* v. *Jones*, supra, 51 Cal. 3d 315; see also Cal. Penal Code § 1127f (West 1986).

[8] In her direct examination, C testified that she would have been fifteen years old when the defendant moved to Lisbon in September, 2005. In addition to testifying to the frequency with which she visited the defendant's home in Lisbon, C testified to being there "[w]henever a UFC game was on," and that she was there "a lot for birthday parties" and at one point for "a creamed corn eating contest . . . with a band."

[9] Ultimately, in *Benite*, this court held that there was no reversible error because, although "this case present[ed] a close call, [this court held] that because of [the] facts, there is no reasonable possibility that the jurors were misled by the charge." *State* v. *Benite*, supra, 6 Conn. App. 676–77.

[10] We consider the phrase "multiple factual allegations," as used in our prior cases, to encompass either different descriptions of the manner in which the prohibited act was committed *or* differing statements as to the specific time at which the proscribed act occurred. Furthermore, we construe this phrase to include specific acts *identified in the information* that form the basis for the state's charge under each count *or evidence of specific acts presented at trial* that are the basis for the state having charged the defendant with having violated a statutory subsection. See *State* v. *Mancinone*, supra, 15 Conn. App. 275–76.

[11] Although counts one, three, five, and six do not specify the number of times that the defendant had contact with the intimate parts of each child, we interpret each count as charging the defendant with having violated § 53-21 (a) (2) on one occasion with respect to the child identified in that count. For example, count three alleged that "in or about 2005 through September 22, 2006, [the defendant] did [violate § 53-21 (a) (2)] in that he had contact with the intimate parts of a child under the age of sixteen years . . . in a

sexual and indecent manner likely to impair the health and morals of said child . . . ."

[12] In count four, the defendant was charged with violating § 53-21 (a) (2) because he "had contact with the intimate parts of a child under the age of sixteen years . . . *and* subjected said minor female to contact with his intimate parts . . . ." (Emphasis added.) We do not address count four, however, because the court provided a specific unanimity instruction as to this count.

[13] The defendant cites *State* v. *Snook*, 210 Conn. 244, 262, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989), and *State* v. *Dennis*, 150 Conn. 245, 250, 188 A.2d 65 (1963), as support for the proposition that, as he states, "separate and distinct acts in violation of [§ 53-21] are separate crimes, each to be proven." The defendant then argues that, because each violation of § 53-21 constitutes a separate offense, the state, in the present case, was required to charge *each* of the defendant's violations of § 53-21 in separate counts and prove each count beyond a reasonable doubt. Thus, the defendant asserts that the manner in which the state charged and prosecuted its case—charging the defendant with one violation of § 53-21 (a) (2) for each child and providing evidence of multiple violations per child—contravenes the decisions concerning § 53-21 in *Snook* and *Dennis*.

The defendant, however, misconstrues the conclusions of our Supreme Court in *Snook* and *Dennis* concerning the divisibility of acts alleged to be in violation of § 53-21. Contrary to what the defendant contends, neither of the decisions in these cases held that, when alleging that a defendant has violated § 53-21 multiple times, the state *must* charge the defendant under separate counts for each violation. Rather, we construe these cases to mean that the state *may*, *but is not required to*, charge each violation in a separate count, even though "[a] distinct repetition of an act prohibited by § 53-21 constitutes a second offense." *State* v. *Snook*, supra, 210 Conn. 262. Indeed, in *Snook*, the court decided that distinct repetitions of acts in violation of § 53-21 constituted separate offenses, in part, to prevent "a person who has committed one sexual assault upon a victim to commit with impunity many other such acts during the same encounter." (Internal quotation marks omitted.) Id. Thus, we are not persuaded by the defendant's reading of *Snook* and *Dennis*.

[14] In the present case, the court did provide a general unanimity instruction as to counts one, three, five, and six. With respect to these counts, the court charged the jury as follows:

"As to each count, if you unanimously find that the state has proved beyond a reasonable doubt each of the elements of the crime of risk of injury to a minor, then you shall find the defendant guilty. On the other hand, if you unanimously find that the state has failed to prove beyond a reasonable doubt any of the elements, you shall then find the defendant not guilty. . . .

"The defendant is entitled to and must be given by you a separate and independent determination of whether he is guilty or not guilty as to each of the counts in the information. Each of the counts charged is a separate crime. The state is required to prove each element in each count beyond a reasonable doubt. Each count must be deliberated upon separately. . . . You may find that some evidence applies to more than one count. The evidence, however, must be considered separately as to each element in each count. Each count is a separate entity. You must consider each count separately and return a separate verdict for each count. This means that you may reach opposite verdicts on different counts. A decision on one count does not bind your decision on another count. . . .

"When you reach a verdict, it must be unanimous."

[15] The defendant and the state agree that the test used by our Supreme Court in *State* v. *Famiglietti*, supra, 219 Conn. 619–20, to determine whether a trial court was required to provide a specific unanimity instruction does not apply to the present case. Because the present case is one in which the evidence presented at trial amounts to the defendant's having violated a *single statutory subdivision on multiple occasions*, we agree with the defendant and the state that the *Famiglietti* test does not apply in this case. See *State* v. *Mancinone*, supra, 15 Conn. App. 274.

[16] If a defendant allegedly violates the same statutory subsection multiple times, the state may charge the defendant in different ways. For example, the state may charge the defendant in one count with having violated the statute *once*, the basis of which is evidence that the defendant violated the statute multiple times that is presented at trial, *or* the state may charge the

defendant for *each* violation under separate counts. Indeed, the United States Court of Appeals for the Second Circuit has recognized that there is a difference between, for example, when a defendant is charged under one count with having committed a crime by engaging in a criminal act ten times and when a defendant is charged in ten separate counts for having committed the same crime ten times. See *United States* v. *Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981) ("With the mailings on which the [g]overnment will rely now reduced to a manageable number, their placement in a single count achieves the obvious benefit of limiting the maximum penalties [the] defendant may face if convicted of mail fraud and also avoids the unfairness of portraying the defendant to the jury as the perpetrator of [fifty] crimes. We anticipate no unfairness to the defendant if the jury, properly instructed, is permitted to convict on [c]ount [o]ne upon finding all of the elements of mail fraud established, including the mailing of at least one item in furtherance of the scheme to defraud.").

[17] In counts one, three, five, and six, the state described neither the specific act that constituted the defendant's violation of § 53-21 (a) (2), nor alleged the specific date on which this violation occurred. The state, however, was under no obligation to allege this information because the date of the offense is not an element of committing an offense under § 53-21 (a) (2), except that the violation must have occurred before the child's sixteenth birthday. See *State* v. *Hauck*, 172 Conn. 140, 150, 374 A.2d 150 (1976) (stating that "[t]he general rule is that where time is not of the essence or gist of the offense, the precise time at which it is charged to have been committed is not material"); *State* v. *Minor*, 80 Conn. App. 87, 92, 832 A.2d 697 (concluding that "[t]he state . . . is not usually required to plead and to prove an exact time when an offense allegedly occurred if the information is sufficiently precise as to the time frame involved"), cert. denied, 267 Conn. 907, 840 A.2d 1172 (2003); *State* v. *Saraceno*, 15 Conn. App. 222, 237, 545 A.2d 1116 (concluding that "as long as the information provides a time frame which has a distinct beginning and an equally clear end, within which the crimes are alleged to have been committed, it is sufficiently definite to satisfy the [constitutional] requirements"), cert. denied, 209 Conn. 823, 552 A.2d 431 (1988), and cert. denied, 209 Conn. 824, 552 A.2d 432 (1988); see also General Statutes § 53-21 (a) (2). Thus, such an omission by itself is not fatal to the state's case. See *State* v. *Marcelino S.*, 118 Conn. App. 589, 596, 984 A.2d 1148 (2009) ("The state has a duty to inform a defendant, within reasonable limits, of the time when the offense charged was alleged to have been committed. The state does not have a duty, however, to disclose information which the state does not have." (Emphasis omitted; internal quotation marks omitted.)), cert. denied, 295 Conn. 904, 988 A.2d 879 (2010); see also *State* v. *Mancinone*, supra, 15 Conn. App. 259.

[18] At the time that *Gipson* was decided, the statute under which the defendant was charged stated as follows: "Whoever *receives, conceals, stores, barters, sells, or disposes* of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both." (Emphasis added.) 18 U.S.C. § 2313 (1976).

[19] Indeed, count four in the present case illustrates a circumstance similar to the way in which, in *Gipson,* the defendant's criminal liability under a count of the indictment was based on multiple statutory elements. See *United States* v. *Gipson*, supra, 553 F.2d 455, 458. In count four, the state alleged that the defendant "had contact with the intimate parts of a child under the age of sixteen years . . . *and* subjected said minor female to contact with his intimate parts . . . ." (Emphasis added.) Unlike counts one, three, five, and six, the defendant could face criminal liability under count four if a jury found beyond a reasonable doubt that he engaged in *either* element of conduct proscribed by § 53-21 (a) (2); that is, the defendant either had contact with the child's intimate parts while she was under sixteen years of age *or* he subjected the child to contact with his intimate parts while she was under sixteen. Accordingly, the court provided a specific unanimity instruction as to this count. See footnote 4 of this opinion.

[20] The defendant argues that the trial court was required to apply the conceptual distinction analysis used in *State* v. *Benite*, supra, 6 Conn. App. 675–76, and *United States* v. *Gipson*, supra, 553 F.2d 458. We disagree because our courts usually apply that analysis in circumstances in which the factual allegations made against a defendant under a criminal count amount to his or her having violated multiple statutory subsections, subdivisions or elements. See, e.g., *State* v. *Reddick*, 224 Conn. 445, 451–54, 619

A.2d 453 (1993); *State* v. *Reyes*, 19 Conn. App. 695, 705, 564 A.2d 309, cert. denied, 213 Conn. 803, 567 A.2d 833 (1989); *State* v. *Delgado*, 19 Conn. App. 245, 247–48, 562 A.2d 539 (1989).

Even if a conceptual distinction analysis was required, our Supreme Court has determined that multiple acts of having contact with the intimate parts of a child are not conceptually distinct. See *State* v. *Spigarolo*, supra, 210 Conn. 391–92. Therefore, the court concluded that "[t]he defendant's right to a unanimous verdict . . . was not violated by the trial court's failure to provide a specific unanimity instruction . . . ." Id., 392. Thus, we conclude that the defendant's argument that the individual occasions on which he had contact with the intimate parts of the children were conceptually distinct acts entitling him to a specific unanimity instruction is unavailing.

[21] The defendant claims on appeal that the risk of a nonunanimous verdict in this case was exacerbated by the substantial amount of uncharged misconduct evidence that was admitted against the defendant at trial. In the defendant's view, this uncharged misconduct evidence could have been relied on by jurors as the "actus reus" of the crimes for which the defendant was convicted. This claim was not preserved in the trial court. Even if we were to address it on the merits, it fails because the defendant conceded that the court properly instructed the jury regarding the proper use of the uncharged misconduct evidence.